BUMGARDNER, Judge.
Lena Robertson, widow of Charles Robertson, appeals the denial of her claim for temporary total benefits, Code § 65.2- *787 500, and the award of permanent partial benefits for Stage I asbestosis based on Mr. Robertson’s average weekly wage when he last worked, twenty-six years earlier, Code § 65.2-50S(B)(17)(a). For the following reasons, we affirm.
The facts were stipulated. Charles Robertson retired from E.I. DuPont de Nemours twenty-six years before he was diagnosed with Stage I asbestosis. He had worked for DuPont for twenty-seven years, and his last occupational exposure to asbestos occurred during his employment there. The worker did not work, earn wages, or seek to earn wages after his voluntary retirement in 1973. Charles Robertson earned no wages in the 52 weeks prior to his diagnosis of asbestosis and suffered no loss of wages as a result of the diagnosis. He died a year after the diagnosis.
The commission denied the worker’s claim for temporary disability benefits because he had not earned any wages in the 52 weeks prior to the date of communication of his disease to him. The commission based its decision on Newton v. Fairfax Police Dep’t, 259 Va. 801, 529 S.E.2d 794 (2000), and Arlington County Fire Dep’t v. Stebbins, 21 Va.App. 570, 466 S.E.2d 124 (1996). Those cases control this case.
Stebbins was a voluntarily retired firefighter. He had not earned any income for 52 weeks before being diagnosed with an occupational disease, heart disease. This Court vacated the commission’s award of compensation for lost wages because an award under those circumstances would result in an economic windfall to the worker. 21 Va.App. at 574, 466 S.E.2d at 126. “The purpose of the Workers’ Compensation Act is to compensate employees when they lose an opportunity to engage in work after suffering work-related injuries. Based on this purpose, the Act compensates injured employees for loss of earning capacity.” Id. at 572, 466 S.E.2d at 125-26 (citations omitted). “Compensation is ultimately dependent upon and determined on the loss of wages.” Id. at 573, 466 S.E.2d at 126 (citations omitted). Stebbins was not entitled to compensation for fost wages because he suffered no economic loss.
*788 The Supreme Court applied that analysis in Newton, 259 Va. at 804, 529 S.E.2d at 795. Newton was a voluntarily retired policeman, who died from a heart attack shortly after receiving a diagnosis of heart disease, an occupational disease. He had not earned wages or sought employment for 52 weeks before learning of his disease. The Court affirmed the denial of weekly indemnity benefits because there was no economic loss. “Claimants are not entitled to weekly indemnity benefits because Newton did not receive any earnings from employment during the 52 weeks preceding the date of the communication of the diagnosis of his occupational disease.” Id. at 805, 529 S.E.2d at 796.
In this case, the worker earned no wages during the 52 weeks prior to the date his disease was communicated to him. We affirm the denial of the claim for wage loss benefits because he suffered no economic loss.
The commission did award compensation for permanent partial loss for Stage I asbestosis. Code § 65.2-503(B)(17)(a). Benefits for the losses listed in Code § 65.2-503 have been described as payment for “loss of what might be termed ‘human capital.’ ” Morris v. Virginia Retirement Sys., 28 Va.App. 799, 806, 508 S.E.2d 925, 929 (1999). Such benefits are not related to income earned. While the commission awarded these benefits, it ruled the average weekly wages would be calculated at the wages the worker last earned prior to his retirement from DuPont twenty-six years before. The worker argues he is entitled to an enhanced average weekly wage, based on the date the disease was communicated to him, as provided in Code § 65.2-406(C).[1]
*789 The commission relied on Chesapeake & Potomac Telephone Co. v. Williams, 10 Va.App. 516, 392 S.E.2d 846 (1990), in ruling that the earlier wage applied. Williams was diagnosed with mesothelioma caused by exposure to asbestos after he voluntarily retired from C & P, but while earning a lower wage with another employer. C & P argued that the proper average weekly wage was the lower wage the worker earned during the preceding 52-week period. The only issue was whether the commission erred in calculating his average weekly wage as the wages earned during his exposure to the disease. The decision specifically dealt with the issue the claimant raises in this case.
However, we find that by using the phrase “in the employment in which he was working at the time of his injury” in Code § 65.1-6 [now 65.2-101], the legislature intended that the average weekly wage award be based upon the wages received from the employment where the employee was exposed to the element which caused the occupational disease for which claim is made.
Id. at 519, 392 S.E.2d at 848.
Contrary to C & P’s argument that the later date of communication should be used, the decision distinguished between “the time of injury for purposes of the average weekly wage” and “the date of injury for purposes of the statute of limitations.” Id. at 516, 392 S.E.2d at 847. The date an occupational disease is discovered and communicated to the worker “shall be treated as the happening of an injury by accident” for purposes of the statute of limitations. Code § 65.2-403(A). Average weekly wage, however, is defined as “the earnings of an injured employee in the employment in which he was working at the time of the injury.” Code § 65.2-101.
In this appeal, the worker argues asbestosis should be treated differently from other diseases when determining *790 wage loss benefits. However, we are bound by the explicit holding in Williams. See Commonwealth v. Burns, 240 Va. 171, 173-74, 395 S.E.2d 456, 457 (1990). We affirm the commission’s calculation of the worker’s average weekly wage at the amount he earned at the time he was exposed to the asbestos.
For the reasons stated, we affirm the decision of the commission.

Affirmed.

. Code § 65.2-406(C), provides in relevant part,
For a first or an advanced stage of asbestosis ... if the employee is still employed in the employment in which he was injuriously exposed, the weekly compensation rate shall be based upon the employee’s weekly wage as of the date of communication of the first or advanced stage of the disease, as the case may be. If the employee is unemployed, or employed in another employment, the weekly compensation rate shall be based upon the average weekly wage of a person of the same or similar grade and character in the same class *789 of employment in which the employee was injuriously exposed and preferably in the same locality or community on the date of communication to the employee of the advanced stage of the disease....