PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Roush, JJ., and Russell, S.J.

PRESTON L. McKELLAR

v. Record No. 140999

OPINION BY
CHIEF JUSTICE DONALD W. LEMONS
October 29, 2015

NORTHROP GRUMMAN SHIPBUILDING, INC.,
ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred in ruling that retirement precluded an injured worker from receiving an award of temporary total disability benefits under Code § 65.2-500.

## I.    Facts and Proceedings

The underlying facts in this case are undisputed.  Preston L. McKellar ("McKellar"), worked for 42 years as a structural welder for Northrop Grumman Shipbuilding ("Northrop Grumman").  On or about April 1, 2010, McKellar notified Northrop Grumman that he would be retiring effective May 1, 2010.  Shortly thereafter, on April 15, 2010, McKellar tripped and fell while working on the construction of a submarine.  McKellar injured his back, hip, knees, hands, and wrists.  Following the accident, McKellar received medical treatment from a shipyard clinic and was placed on restricted duty for the remainder of April 2010.

On May 1, 2010, McKellar retired as scheduled.  When he continued to experience pain, an orthopedic surgeon examined McKellar, found him to be totally disabled, and placed him on "no-work status."

McKellar then filed a claim against Northrop Grumman with the Virginia Worker's Compensation Commission ("Commission"), seeking medical benefits and temporary total disability compensation.

A deputy commissioner reviewed McKellar's medical records and conducted a hearing on January 12, 2013. The deputy commissioner found McKellar's evidence and testimony sufficient to warrant an award of medical benefits as well as temporary total disability benefits. At the hearing, McKellar admitted that he had not pursued employment since his retirement from Northrop Grumman, explaining that "[m]y doctors put me on a no-work status, and I don't feel that I can work anywhere." The deputy commissioner found that although McKellar was retired, his total incapacity entitled him to benefits under the Commission's decision in Browder v. Southside Regional Medical Center, 71 O.I.C. 289 (1992) (holding that a claimant's post-injury resignation did not preclude claimant from receiving total temporary disability benefits).

Northrop Grumman subsequently appealed the deputy commissioner's decision to the full Commission. On appeal, a majority of the Commission affirmed the deputy commissioner's award of medical benefits but denied the claim for temporary total disability benefits. McKellar v. Northrop Grumman Shipbuilding, Inc., No. VA00000254165, slip op. at 7 (Va. Workers' Comp. Comm'n Oct. 23, 2013). The Commission found that McKellar's "wage loss would have occurred regardless of his compensable injury." Therefore, "[a]warding temporary total disability benefits would, in effect, provide [McKellar] with an additional stream of retirement income denied to similarly situated coworkers who were not injured." Commissioner Marshall dissented, asserting that a claimant suffering from a total disability need not show that he sought or intended to seek alternative employment. The dissent further noted that McKellar's "total disability, not his retirement, removed him from the labor market."

McKellar appealed the Commission's decision to the Court of Appeals of Virginia. In a published opinion, the Court of Appeals affirmed the decision from the Commission and denied McKellar's award of temporary total disability benefits. McKellar v. Northrop Grumman

2

Shipbuilding Inc., 63 Va. App. 448, 758 S.E.2d 104 (2014). The Court of Appeals concluded that McKellar's "retirement, not his injury, caused his loss of compensation" because the record was "devoid of evidence that [McKellar] sought or held any income-producing employment after his retirement" and "the record supports the [C]ommission's finding that [McKellar] intended to retire and not seek other employment income." Id. at 448, 758 S.E.2d at 108.

McKellar appealed the judgment of the Court of Appeals to this Court, and we determined that this case involves a matter of significant precedential value. See Code §§ 17.1-410(B) and -411. We granted McKellar an appeal on the following assignment of error:

> The Virginia Court of Appeals' ruling that Mr. McKellar's retirement from his employment with the Employer precludes an award of temporary total disability benefits – even where he was in a no work status and medically unable to work during the period of benefits claimed – is contrary to law and should be reversed.

## II. Analysis

### A. Standard of Review

"On appeal, the Commission's findings of fact are conclusive and binding, but when there is no conflict in the evidence, the question of the sufficiency thereof is one of law, and the same is true when there is no credible evidence to support the Commission's factual findings." VEPCO v. Kremposky, 227 Va. 265, 269, 315 S.E.2d 231, 233 (1984) (citations and internal quotation marks omitted). Likewise, conclusions of the Commission on questions of law, or mixed questions of law and fact, are not binding on review. Brown v. Fox, 189 Va. 509, 517, 54 S.E.2d 109, 113 (1949). Furthermore, "we are required to construe the law as it is written and an erroneous construction by [the Commission] cannot be permitted to override the clear mandates of [the] statute." Danville Radiologists, Inc. v. Perkins, 22 Va. App. 454, 458, 470 S.E.2d 602, 604 (1996) (citations and internal quotation marks omitted). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." Conyers v. Martial Arts

3

World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007). "[W]e must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Id.

In this case, both parties agree that McKellar suffered a compensable, work-related injury in the course of his employment with Northrop Grumman. Both parties also agree that the injury rendered McKellar totally disabled. The sole question on appeal is whether the Commission and the Court of Appeals erred in applying an "economic loss" standard rather than a "loss of earning capacity" standard to evaluate McKellar's claim for benefits.

We have long held that the fundamental purpose of the Virginia Worker's Compensation Act, Code § 65.2-100, et seq., is to compensate employees for accidental injuries arising in the workplace. Feitig v. Chalkley, 185 Va. 96, 98, 38 S.E.2d 73, 73-74 (1946). In keeping with that purpose, the Act expressly distinguishes injuries which render a claimant partially incapable of work from those which cause total incapacity.

### B. Compensation for Total Incapacity

Code § 65.2-500(A) governs compensation in cases of total incapacity, and states in relevant part that:

> when the incapacity for work resulting from the injury is total, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such total incapacity, a weekly compensation equal to 66 2/3 percent of his average weekly wages, with a minimum not less than 25 percent and a maximum of not more than 100 percent of the average weekly wage of the Commonwealth as defined herein.

The plain language of this statute provides that employers "shall pay . . . during such total incapacity" two-thirds of the injured worker's weekly earnings. Therefore, Code § 65.2-500 applies to totally disabled workers who have lost the capacity to earn wages.

4

Past decisions of our Court, the Court of Appeals, and the Commission indicate that loss of earning capacity is the proper test for awarding compensation in total disability cases. In J.A. Foust Coal Co. v. Messer, 195 Va. 762, 766, 80 S.E.2d 533, 535 (1954), we held that total disability compensation under Code § 65.2-500's predecessor "cover[s] losses occasioned by the impairment of the claimant's earning capacity." Likewise the Court of Appeals has held that compensation under Code § 65.2-500 "requires only proof of pre-injury average weekly wage and a showing of total disability." Bay Concrete Constr. Co. v. Davis, 43 Va. App. 528, 540, 600 S.E.2d 144, 150 (2004).

An injured worker bears the burden of proving that an industrial accident caused his injury and disability. See Marshall Erdman & Assocs. v. Loehr, 24 Va. App. 670, 679, 485 S.E.2d 145, 149-50 (1997). Yet once the worker meets the burden of proving total incapacity, as McKellar did in this case, the burden shifts to the employer to show that the employee's disability is not total. See Clay v. Transcontinental Gas Pipeline, VWC File No. 177-42, slip op. at 2 (Sept. 3, 1999) (holding that an employee who suffered a total incapacity had no obligation to look for work).

The Commission consistently awards temporary total disability benefits in cases where the injured worker retires or resigns. See Browder, 71 O.I.C. at 292 (holding that the resignation of a 66-year-old cook "should not preclude an award of compensation for total disability."); see also Burlington Indus., Inc. v. Golda, 2000 Va. App. LEXIS 595 (Va. Ct. App. Aug. 15, 2000) (unpublished) (holding that "voluntary retirement from the employer does not remove or diminish [claimant's] ability to earn wages. However, being temporarily and totally disabled does prevent the claimant from earning wages."); Clay, VWC File No. 177-42, slip op. at 2

5

(upholding award of benefits after explaining that "claimant's total disability, not his retirement, removed him from the labor market.").

Injured workers who leave the workforce for reasons unrelated to their injuries are nonetheless entitled to temporary total disability compensation. In Kelly v. Elkins Energy Corp., 62 O.I.C. 270, 274 (1983), the Commission ordered that temporary total disability benefits resume for an injured coal miner who was laid off from selective employment. In another case, an injured worker received temporary total disability benefits despite being terminated from light duty due to her insubordination, tardiness, and rudeness to customers. See Potomac Edison Co. v. Cash, 18 Va. App. 629, 630, 446 S.E.2d 155, 156 (1994). Benefits for temporary total incapacity will continue to flow even where a claimant is incarcerated in federal prison. See Escobar v. L.M. Sandler & Sons, Inc., 68 O.I.C. 206 (1989); see also Baskerville v. Saunders Oil Co., 1 Va. App. 188, 193, 336 S.E.2d 512, 514-15 (1985) (Court of Appeals noting in dicta that benefits would still be available to an incarcerated claimant who suffered from a total incapacity).

These cases reflect the principle that an injured worker's status in the labor market is irrelevant where the worker's incapacity is total. They illustrate why the loss of earning capacity test is the proper standard for awarding compensation in cases of total incapacity under Code § 65.2-500. As such, a retired worker whose work-related injury causes total incapacity need not produce evidence of a pre-injury intent to reenter the workforce.

### C. Compensation for Partial Incapacity

By contrast, Code § 65.2-502(A) governs cases of partial incapacity.

> [W]hen the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as hereinafter provided, to the injured employee during such incapacity a weekly compensation equal to 66 2/3 percent of the difference between his

6

average weekly wages before the injury and the average weekly wages which he is able to earn thereafter, but not more than 100 percent of the average weekly wage of the Commonwealth as defined in § 65.2-500.

As the statute indicates, employers are required in such cases to pay two-thirds of "the difference" between the partially disabled worker's pre- and post-injury wages. Consequently, Code § 65.2-502 presumes that where an injured worker is only partially disabled, that employee can continue working either on restricted duty or in an altogether new job. As a result, economic loss is the appropriate test for the compensation award in cases of partial incapacity whereas loss of earning capacity is the proper test for such awards in cases of total incapacity.

## D. Application of Proper Standard

In denying McKellar's award of temporary total disability benefits, both the Commission and the Court of Appeals failed to apply the plain language of Code § 65.2-500. Instead of applying the test for total incapacity as delineated by Code § 65.2-500, the court and Commission below improperly conflated the analyses for total incapacity and partial incapacity. The Court of Appeals cited extensively to cases decided under Code § 65.2-502, the partial incapacity statute, holding that it "provides for payments in much the same fashion as the statutory provision for total incapacity, Code § 65.2-500." 63 Va. App. at 455 n.3, 758 S.E.2d at 107 n.3. This conclusion is plainly erroneous. Although both Code §§ 65.2-500 and -502 provide payments for injured workers, the corresponding tests differ significantly. As explained above, Code § 65.2-500 governs total incapacity and applies a loss of earning capacity test, while Code § 65.2-502 pertains to partial incapacity and applies an economic loss test.

The Court of Appeals relied heavily on Arlington County Fire Department v. Stebbins, 21 Va. App. 570, 466 S.E.2d 124 (1996), but the facts of that case differ substantially from McKellar's case. Stebbins concerned Code § 65.2-101(1)(a) and the calculation of an

7

employee's average weekly wage. 21 Va. App. at 573, 466 S.E.2d at 126. Stebbins was denied benefits not because of his status as a retired fireman, but rather because he reported no earnings for the previous fifty-two weeks. Id. The Commission was therefore unable to calculate the claimant's pre-injury earning capacity. Id. In McKellar's case, less than one month had elapsed between the time of his injury and the filing of his claim, and McKellar proved his pre-injury weekly wage of $963.60. Furthermore, the Stebbins decision reiterated that "[t]he purpose of the Workers' Compensation Act is to compensate employees when they lose an opportunity to engage in work after suffering work-related injuries." 21 Va. App. at 572, 466 S.E.2d at 125-26 (citing Potomac Edison Co. v. Cash, 18 Va. App. 629, 631, 446 S.E.2d 155, 156 (1994)) (emphasis added).

The Court of Appeals also relied on Utility Trailer Manufacturing Co. v. Testerman, 58 Va. App. 474, 711 S.E.2d 232 (2011), but that case does not apply because it had a narrow focus and involved a worker with only a partial incapacity who sought benefits under Code § 65.2-502. "[O]ur decision is limited in scope; it addresses only those cases where a partially incapacitated employee is furloughed." 58 Va. App. at 483, 711 S.E.2d at 236 (emphasis in the original).

Likewise, the Court of Appeals in this appeal quoted another case decided under Code § 65.2-502, Lam v. Kawneer Co., 38 Va. App. 515, 566 S.E.2d 874 (2002), to warn that an award of benefits to McKellar would "unjustly enrich the worker and result in manifest injustice." McKellar, 63 Va. App. at 456, 758 S.E.2d at 108. However, Lam is wholly inapposite because it concerned a partially disabled employee whose benefits terminated when he obtained a new job with wages higher than his pre-injury wages. 38 Va. App. at 518, 566 S.E.2d at 875.

McKellar's claim for temporary total disability benefits under Code § 65.2-500 cannot be decided in the same manner as a Code § 65.2-502 case. A partially disabled retiree could seek

8

other employment. A totally incapacitated retiree cannot work. A partially disabled retiree can supplement his retirement income. McKellar cannot. The Court of Appeals wrongly concluded that an award of temporary total disability benefits to McKellar would constitute a "windfall" that another "similarly situated retired worker would not receive." 63 Va. App. at 456, 758 S.E.2d at 108. This conclusion ignores the uncontested fact that at the time of the hearing McKellar was totally disabled and incapable of earning a salary. McKellar is not similarly situated to retirees who are not totally disabled and who have the option of re-entering the workforce at some time. Accordingly, we hold that the Commission and the Court of Appeals erred in denying temporary total disability benefits to McKellar.

### III. Conclusion

The Virginia Worker's Compensation Act provides distinct and independent tests for total incapacity versus partial incapacity. When an employee is totally disabled and medically precluded from working, the appropriate test under Code § 65.2-500 focuses on the loss of earning capacity, not the economic loss. The deputy commissioner correctly found that McKellar was totally disabled and that he lacked all earning capacity. Therefore, McKellar is entitled to temporary total disability compensation. Accordingly we will reverse the judgment of the Court of Appeals, and we will remand the case to the Court of Appeals with direction that it remand the case to the Worker's Compensation Commission with instructions to reinstate the award of compensation as determined by Deputy Commissioner Wilder's March 11, 2013 opinion.

<u>Reversed and remanded.</u>

9

JUSTICE McCLANAHAN, concurring.

I concur in the result of the Court's opinion in this case, but would reverse the judgment of the Court of Appeals based solely upon the language of Code § 65.2-500.

Code § 65.2-500 provides in the portion that is controlling on this appeal:

[W]hen the incapacity for work resulting from the injury is total, the employer shall pay . . . to the injured employee during such total incapacity, a weekly compensation.

"The plain language of the statute governs [the] analysis." Tauber v. Commonwealth, 263 Va. 520, 545, 562 S.E.2d 118, 131 (2002) (citing Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001) and Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001)).

The deputy commissioner who reviewed the present claim found that McKellar's incapacity for work resulting from the injury is total, a fact uncontested on appeal. It follows that the employer shall pay to McKellar during such incapacity a weekly compensation. The statute plainly provides for this result.[1]

The Court of Appeals improperly required McKellar to prove causation between his work injury and his post-retirement loss. To support the existence of this purported causation element,

_____

[1] Code § 65.2-500 alone resolves this case. I query the foundation for the majority's reliance upon a rigid dichotomy that loss of earning capacity applies to total disability while economic loss applies to partial disability. Usage of these terms is hardly uniform; over many decades the Court of Appeals and this Court have used both these terms with regard to total disability, Arlington Cty. Fire Dep't v. Stebbins, 21 Va. App. 570, 573, 466 S.E.2d 124, 126 (1996) (total disability benefits due under the statute "approximate the *economic loss* suffered by an employee . . . when there is a *loss of earning capacity* because of work-related injury or death") (second emphasis added; citation and internal quotation marks omitted); have used loss of earning capacity with regard to both total and partial disability, J. A. Foust Coal Co. v. Messer, 195 Va. 762, 766, 80 S.E.2d 533, 535 (1954) ("Benefits awarded under [predecessors to §§ 65.2-500, 65.2-502] *cover losses* occasioned by the impairment *of the claimant's earning capacity*.") (emphases added); and have used the concept of economic loss with regard to both total and partial disability. Great Atlantic & Pacific Tea Co. v. Bateman, 4 Va. App. 459, 461, 359 S.E.2d 98, 99 (1987) ("Benefits under [predecessors to §§ 65.2-500, 65.2-502] for total and partial incapacity compensate the employee for *loss of earnings* resulting from the injury.") (emphasis added).

10

the Court of Appeals relied on its holding in Utility Trailer Manufacturing Co. v. Testerman, 58 Va. App. 474, 482, 711 S.E.2d 232, 236 (2011), requiring that a furloughed partially disabled claimant demonstrate "the causal relationship between his loss of wages and his injury." McKellar v. Northrop Grumman Shipbuilding Inc., 63 Va. App. 448, 456, 758 S.E.2d 104, 107 (2014). As the majority opinion notes, the Utility Trailer decision was expressly "limited in scope; it addresses only those cases where a partially incapacitated employee is *furloughed*." 58 Va. App. at 482, 711 S.E.2d at 236. The Utility Trailer holding is thus inapposite here, where McKellar is totally disabled and a furlough is not a fact applicable in the case.

The Court of Appeals also asserted that its holding in Arlington County Fire Dep't v. Stebbins, 21 Va. App. 570, 573, 466 S.E.2d 124, 126 (1996), requires that a totally disabled claimant prove actual loss to qualify for total disability benefits.. The Court of Appeals misconstrues that holding. Stebbins was entitled to benefits insofar as he proved total incapacity resulting from a work injury. However, because Stebbins had no income during the statutory look-back period used to calculate the amount of benefits due, the court was faced with a zero-benefits award and thus ultimately denied the claim.[2] Id. at 573, 466 S.E.2d at 126. In this narrow circumstance, the Stebbins holding simply required evidence of loss to yield a non-zero award of benefits under the statutory calculation.[3]

---

[2] The court held that "Stebbins *is entitled to no compensation* because he reported no earnings for the preceding fifty-two weeks." 21 Va. App. at 573, 466 S.E.2d at 126 (emphasis added). In other words, Stebbins was affirmatively entitled to compensation, but in the amount of zero. The court did not, as the Court of Appeals below asserted, negatively hold that Stebbins *was not entitled to compensation* because he reported no earnings.

[3] The Court of Appeals also opined that awarding McKellar benefits would elevate him to a better position than a similarly situated worker who retired on the same date. As the majority precisely explains, this hypothetical worker is not similarly situated to McKellar, because McKellar is totally disabled due to a work injury and thus has lost the option to work again for the duration of his incapacity.

McKellar proved a total incapacity for work resulting from a work injury. He has established all that Code § 65.2-500 requires of him to qualify for total disability benefits. On this basis alone, I would reverse the judgment of the Court of Appeals in this case.